# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| LAVOYA MONIQUE BRYANT, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 16-04325 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff seeks reversal of the decision of the defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for social security disability insurance and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to the disputed issues.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 2-3]. In a January 23, 2014 written hearing decision that constitutes the Commissioner's final decision, the Administrative Law Judge ("ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. The ALJ determined that plaintiff could not perform her past relevant work, but that she could perform alternative jobs available in significant numbers in the national economy. [JS 4; Administrative Record ("AR") 43]. Accordingly, the ALJ concluded that plaintiff was not disabled at any time from May 30, 2012,

her alleged onset date, through the date of the ALJ's decision. [AR 44].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

Plaintiff contends that the ALJ did not meet his burden at step five of the sequential analysis because an unresolved conflict exists between the testimony of the vocational expert ("VE"), which the ALJ adopted, and the demands of the alternative jobs the VE identified as described in the Dictionary of Occupational Titles ("DOT").

At step five, the ALJ has the burden of establishing, through the testimony of a VE or by reference to the Medical-Vocational Guidelines, that the claimant can perform alternative jobs that exist in substantial numbers in the national economy. See Gutierrez v. Colvin, 844 F.3d 804, 806 (9th Cir. 2016); Bruton v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001). When using the testimony of a VE at step five, "the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

The Commissioner "routinely relies" on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903. F.2d 1273, 1276 (9th Cir. 1990); see

Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the [DOT]."). Should an "apparent or obvious" conflict arise between a VE's testimony regarding the claimant's ability to perform alternative jobs and the DOT's description of those jobs, the ALJ must ask the VE "to reconcile the conflict" and must determine whether the VE's explanation is reasonable before relying on the VE's testimony. Gutierrez, 844 F. 3d at 807, 808; see Massachi v. Astrue, 486 F.3d 1149, 1153-1154 (9th Cir. 2007) (stating that "neither the [DOT] nor the [VE] evidence automatically trumps when there is a conflict," and that the ALJ must determine whether a conflict exists, whether the VE's explanation for the conflict is reasonable, and whether a basis exists for relying on the VE rather than the DOT).

The VE testified that a hypothetical person with limitations posited by the ALJ, including a limitation to "simple, routine, repetitive tasks" that he later incorporated into his RFC finding, could perform the DOT jobs of order clerk, food and beverage, DOT job number 209.567-014; charge accountant, DOT job number 205.367-014; and call-out operator, DOT job number 237.367-014. [AR 46, 51, 87-88]. The VE testified that her testimony in that respect was consistent with the DOT. [AR 89]. Relying on the VE's testimony, the ALJ determined that plaintiff could perform those alternative jobs and therefore was not disabled. [AR 51-52].

Notwithstanding the VE's testimony that no conflict existed, an apparent conflict exists as a matter of law between the ALJ's finding that plaintiff is limited to "simple, routine, repetitive tasks" and the VE's testimony that a person with plaintiff's RFC could perform DOT jobs requiring "Level 3" reasoning.[1] The ALJ's failure to resolve that apparent conflict was legal error. See Zavalin v. Colvin, 778 F.3d 842, 846-847 (9th Cir. 2015) (holding that an apparent conflict existed between the ALJ's finding that the claimant retained the RFC to perform simple, routine, or repetitive work, and the Level 3 reasoning requirements of

---

[1] DOT jobs classifications include a "General Educational Development" ("GED") component comprising three scales: Reasoning Development, Math Development, and Language Development. The GED reasoning, math, and language development scales range from Level 1 (low) to Level 6 (high). Level 3 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, Appendix C, Components of the Definition Trailer (4th ed. rev.1991), available at 1991 WL 688702.

3

the alternative cashier and surveillance system monitor jobs that the ALJ found the claimant capable of performing, and that the ALJ erred in failing to resolve the apparent conflict).

Since an ALJ's decision may not be reversed for errors that are harmless, the Court must conduct a harmful error analysis, asking whether "the ALJ's failure to resolve an apparent inconsistency . . . leave[s] us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence." Zavalin, 778 F.3d at 846, 848 (holding that the ALJ's failure to reconcile the apparent conflict was not harmless and remanding for further administrative proceedings). In assessing harmlessness, the Court may consider only the reasons asserted by the ALJ and may not find an error harmless by relying on evidence not relied upon by the ALJ. See Zavalin, 778 F.3d at 848.

Plaintiff contends that the ALJ's error was not harmless. See McLeod v. Astrue, 640 F.3d 881, 886-888 (9th Cir. 2011) (holding that the ordinary harmless error rule applied in civil cases applies in social security disability cases, and that the burden is on the party attacking the agency's determination to show that prejudice resulted from the error) (citing Shinseki v. Sanders, 556 U.S. 396, 406-409 (2009)). Analogizing to Zavalin, plaintiff contends that the record lacks substantial evidence demonstrating that she can perform Level 3 reasoning jobs. Specifically, plaintiff notes that the ALJ found that plaintiff had borderline intellectual functioning, was depressed, and told the Commissioner's examining psychologist, Dr. Pierce, that she had been "let go" from her job as a medical assistant because she could not recall tasks after "some months" had passed. [JS 10; AR 45-46, 709].

In Zavalin, the Ninth Circuit examined the DOT definitions for the cashier and surveillance monitor jobs identified by the ALJ and concluded that evidence that the claimant had completed high school and did well in math was insufficient to support the ALJ's finding that the claimant could perform those jobs, especially since the claimant was found disabled as a child based on severe impairments including cerebral palsy, a learning disorder, and a speech impairment; had been enrolled in special education classes and in mainstream classes with accommodations for his impairments; received a modified high-school diploma due to his special education status; and had no past relevant work. Zavalin, 778 F.3d at 844, 847-848. The Ninth Circuit acknowledged that the claimant's use of computers and video games might show that he was capable of performing those jobs, but held that it could not rely on that evidence on appeal because the ALJ had not done so, and that even if such evidence were considered, there was "no indication of the extent or

manner of [the plaintiff's] computer use, or the complexity of his computer games" that would demonstrate the requisite reasoning ability. Zavalin, 778 F.3d at 848.

Defendant argues that Zavalin is distinguishable and that any error was harmless because the apparent conflict in this case can be reconciled in a manner that was not possible on the record in Zavalin. That contention has merit.

First, unlike the unlike in Zavalin, there is no evidence suggesting that plaintiff had disabling childhood mental impairments.

Second, unlike the claimant in Zavalin, plaintiff was not enrolled in special education classes, and she also completed some post-secondary education. Dr. Pierce, whose consultative examination report the ALJ discussed and credited [AR 49-50], said that plaintiff reported graduating from high school in 1997, "not requiring special education for language arts or mathematics," and that "[s]he finished a medical assistant course." [AR 709; see also AR 266 (plaintiff's disability report stating that she did not take special education classes)]. Under the Commissioner's regulations, completing "high school or above" means that a claimant has "abilities in reasoning . . . acquired through formal schooling at a 12th grade level or above," and the Commissioner will "generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4).

Third, unlike the claimant in Zavalin, plaintiff had been employed in the past and had past relevant work as a data entry clerk, secretary, and, most recently, as a medical assistant in 2012. [AR 50]. The DOT classifies the jobs of medical assistant and secretary as Level 4 reasoning jobs, so even assuming that plaintiff's mental impairments diminished her work-related functional capacity after her alleged onset date in 2012, her ability to perform jobs requiring a higher reasoning level in the recent past suggests that she likely retains the ability to perform some Level 3 reasoning jobs.

Fourth, while the ALJ found that plaintiff's severe impairments included "borderline intellectual functioning," he based that finding on the consultative examination report of Dr. Pierce, who concluded that plaintiff had "borderline *to higher intellectual functioning (by history presentation and testing).*" [AR 712 (italics added); see AR 49-50]. In his narrative assessment, Dr. Pierce explained that plaintiff "apparently retains the capacity to complete simple and repetitive to *selectively higher demand vocational skills . . . . Reasoning levels are finally judged adequate to this lower level of vocational functioning, to the extent [that*

*plaintiff] does not show significant adaptive deficits except where her physical limitations challenge her, and is relatively independent with [activities of daily living]*." [AR 49-50 (italics added)]. Dr. Pierce's conclusion that plaintiff's actual level of intellectual functioning was somewhat higher than borderline supports a reasonable inference that she was not precluded from performing every job that requires Level 3 reasoning.

Finally, the Ninth Circuit applied a common-sense perspective in Zavalin to conclude that the DOT jobs at issue in that case required tasks that could "contain situational variables that may not be simple or repetitive." Zavalin, 778 F.3d at 848. In particular, the Ninth Circuit remarked that the DOT job of cashier requires "reconciling the cash on hand against the cash register's tape and issuing credit memorandums to customers," while a person performing the DOT job of surveillance system monitor "may be called upon to use discretion and judgment in rapidly evolving scenarios, including deciding when a situation requires the authorities to be notified, all while continuing to maintain surveillance." Zavalin, 778 F.3d at 848. [AR 49-50, 712 (italics added)].

Similar concerns exist with respect to only one of three jobs identified by the ALJ, the DOT job of charge accountant. The DOT definition of that job involves situational variables that could be more than simple, routine, and repetitive, such as interviewing customers who are applying for credit, reviewing credit applications, helping complete credit applications, checking references, and correcting errors on charge accounts. See DOT job number 205.367-014, 1991 WL 671715. The DOT descriptions of the jobs of food and beverage order clerk and call-out operator, however, appear to involve few or minimal situational variables.[2,3] The VE testified that those two jobs combined number over 300,000 in the national economy.

---

[2] A food and beverage order clerk

> [t]akes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions.

DOT job number 209.567-014.

[3] A call-out operator

[AR 88]. Accordingly, those alternative jobs are sufficient to meet the Commissioner's burden at step five.

The ALJ's error in failing to reconcile the apparent conflict was harmless because the record contains substantial evidence demonstrating that plaintiff was capable of performing the DOT jobs of food and beverage order clerk and call-out operator, and those jobs exist in significant numbers in the national economy. Accordingly, plaintiff has not met her burden to show that the error was harmful.

**Credibility finding**

Plaintiff argues that the ALJ made an inadequately supported finding discounting the credibility of her subjective symptoms.

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014); Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. However, if the ALJ's assessment

---

> [c]ompiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber.

DOT job number 237.367-014.

7

of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ summarized plaintiff's subjective hearing testimony as follows:

> Decreased energy, decreased concentration, sleepiness, stomach issues, difficulty holding objects due to numbness in her right hand, cannot do household chores, cannot lie flat, has numbness and poor circulation in her feet, knees hurt, spends many days in bed, cannot sit stand, or walk for long. She uses a cart at the store and cannot walk around the whole store.

[AR 47]. Plaintiff also reported that she sometimes became depressed, could not handle stress well, and felt less of a woman. [JS 15; AR 295-298]. She feared that "people will get tired of me, that my kids will not even need me cause I'm not the mother stuff." [JS 15; AR 323]. During the November 2014 hearing, plaintiff's counsel asked her about her mental health treatment. Plaintiff testified that she had been going to mental health providers "[o]n and off" since approximately 2009. For "[m]onths now" she had been receiving mental health treatment from Palmdale Mental Health, where her providers prescribed Seroquel, Prozac, and Benadryl. Prozac did not cause side effects, but Benadryl made her groggy and "very tired," so that she would need to take naps during the day when taking that medication in the morning. [JS 16; AR 80].

The ALJ found that plaintiff had severe impairments consisting of fibromyalgia, irritable bowel syndrome, borderline intellectual functioning, depression, and degenerative joint disease of the right knee. [AR 44]. The ALJ determined that during an eight-hour work day, plaintiff could sit for six hours; stand and walk for four hours; needed to briefly alternate sitting and standing positions at least every 30 minutes; required a cane for periods of extended ambulation; can no more than occasionally climb ramps or stairs, balance, stoop, or crouch; can never kneel, crawl, or climb ladders or ropes; cannot tolerate exposure to dangerous machines or unprotected heights; can no more than frequently handle or finger bilaterally; is limited to simple, routine, repetitive tasks; can tolerate no more than occasional work setting changes; and can tolerate no more than frequent interaction with the public or co-workers. [AR 46].

The ALJ provided legally sufficient reasons for partially rejecting plaintiff's subjective testimony. The ALJ noted that the Commissioner's consultative examining physician, Dr. Dhiman, concluded that plaintiff exerted suboptimal effort during the examination and exaggerated her subjective symptoms. [AR

50, 715-720]. Affirmative evidence of malingering[4] may be sufficient to discredit a claimant's subjective complaints. See Bagoyan Sulakhyan v. Astrue, 456 F. App'x 679, 682 (9th Cir.2011) ("When there is affirmative evidence of malingering . . . the ALJ is relieved of the burden of providing specific, clear, and convincing reasons to discount claimant's testimony.") (citing Carmickle, 533 F.3d at 1160 n.1); Schow v. Astrue, 272 F. App'x 647, 651 (9th Cir. 2008) (noting that "the weight of our cases hold that the mere existence of 'affirmative evidence suggesting' malingering vitiates the clear and convincing standard of review"); Flores v. Comm'r of Soc. Sec., 237 F. App'x 251, 252–253 (9th Cir. 2007) ("An ALJ may reject a claimant's subjective pain testimony if the record contains affirmative evidence of malingering."); Richardson v. Astrue, 2011 WL 3273255, at * 7 (W.D. Wash. July 28, 2011) (noting that "no actual diagnosis of malingering is required for the ALJ or the Court to find affirmative evidence thereof," and that "the important point is that there must be *affirmative evidence* of malingering"; Taylor v. Apfel, 2000 WL 365034, *3 (N.D. Cal. March 31, 2000) (holding that the ALJ properly discounted the severity of the claimant's subjective pain complaints because two examining physicians suspected that the claimant was malingering).

Even if the affirmative evidence of malingering that the ALJ cited is disregarded, the ALJ articulated other reasons for his adverse credibility finding that are clear and convincing. Those reasons include a lack of objective or clinical evidence corroborating the alleged severity of plaintiff's subjective symptoms; inconsistencies between plaintiff's description of her daily activities; plaintiff's "repeated failure to follow-up on mental health referrals"; and plaintiff's testimony that she had not been able to find another job since she worked as a medical assistant, suggesting that she did not consider herself incapacitated. [See AR 49-50, 574-575, 709, 716].

Plaintiff argues that the ALJ improperly relied on evidence of lack of treatment or inconsistent follow-up treatment because plaintiff notified the Appeals Council that she did not have private insurance and because "mental impairments are underreported and undertreated." [JS 20]. An ALJ must be cautious

---

[4] Malingering is defined as the "intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." United States v. Wilbourn, 336 F.3d 558, 559 (7th Cir. 2003) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 739 (rev. 4th ed. 2000)).

9

about relying too heavily on a lack of mental health treatment. See Nguyen v. Chater, 100 F.3d 1462, 1464-1465 (9th Cir. 1996) (noting that "depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious medical illness"). Nonetheless, the ALJ reasonably relied on evidence that even when plaintiff had medical coverage through Kaiser Permanente or utilized low cost treatment options available to her, such as the Los Angeles County Department of Mental Health, she failed to comply with referrals or recommendations for treatment and missed scheduled appointments. [See AR 49-50]. Bunnell, 947 F.2d at 346 (stating that the "unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is relevant in assessing the credibility of subjective testimony). During the 2014 hearing, plaintiff's counsel questioned her about her mental health treatment. Plaintiff testified that she had obtained mental health treatment "off and on" since 2009, when she was still working, and that she had been receiving mental health treatment from a clinic in Palmdale for "months now," but counsel did not question plaintiff about any gaps in her "off and on" mental health treatment, or any inconsistencies between her treatment history and her subjective allegations. [See AR 79-80]. The ALJ's duty to ensure that the record was fully developed did not require him to ask specific questions of plaintiff on this topic that her attorney easily could have asked but did not. See Solorazo v. Astrue, 2012 WL 84527, at *6 (C.D.Cal. Jan.10, 2012) (stating that counsel "have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed," and rejecting plaintiff's contention that "apparent conflicts" existed between the vocational expert's testimony and the DOT where the claimant's hearing counsel failed to question the VE about any alleged conflicts or request the ALJ do so).

Plaintiff further contends that the ALJ wrongly relied on plaintiff's statement to Dr. Dhiman that she had been unable to find another job because the Commissioner's regulations permit a disability benefits claimant to undergo "trial work periods" and "unsuccessful work attempts." [JS 21]. See 20 C.F.R. §§ 404.1520, 404.15929a)(4)(i). Plaintiff misapprehends the ALJ's reasoning. He did not rely on a "trial work period" or "unsuccessful work attempt" to deny plaintiff benefits. He simply inferred that plaintiff's subjective testimony that she was unable to work was less credible in light of evidence that she looked for a job after her alleged onset date, albeit unsuccessfully. The inference was a rational one and was merely one piece of evidence on which the ALJ permissibly relied to find plaintiff's subjective complaints less than

fully credible. See 20 C.F.R. §§ 416.929(a), (c)(3) (stating that the Commissioner will consider a claimant's efforts to work and prior work record in evaluating symptoms); Social Security Ruling 96-7p, 1996 WL 374186, at *5 (stating that adjudicator may consider "[s]tatements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work").

Plaintiff argues that she submitted new evidence to the Appeals Council that "substantially supports" plaintiff's subjective testimony and that warrants reversing the ALJ's decision. The new evidence is a mental RFC questionnaire by psychiatrist Amber Kondor, M.D. dated November 13, 2014, one day after the administrative hearing. [AR 1476-1478]. Dr. Kondor states that she performed a medication evaluation and psychiatric assessment. [AR 1476]. Based on plaintiff's "medical [and] psychiatric history [and] current symptoms," Dr. Kondor opined that plaintiff had "mild," "moderate," "marked," and "extreme" mental functional limitations, and that her symptoms, including extremely low self-worth, low motivation, depressed mood, crying spells, and anxiety, "would make her ability to work an 8[-hour] day nearly impossible." [AR 1477]. Dr. Kondor opined that plaintiff's limitations have existed since 2011, "when she was diagnosed with fibromyalgia," and possibly earlier. [AR 1477].

Plaintiff does not challenge the Appeals Council's determination that Dr. Kondor's report does not warrant changing the ALJ's decision, and that determination is not subject to judicial review in any event. Plaintiff contends, however, that "[t]he additional evidence considered by the Appeals Council demonstrates that the Commissioner's decision is not supported by substantial evidence or free of legal error." See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161-1162 (9th Cir. 2012) ("[W]e do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action. When the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and the district court reviews that decision for substantial evidence, based on the record as a whole.") (internal citations and quotation marks omitted).

Dr. Kondor's opinion does not demonstrate the absence of substantial evidence supporting the ALJ's decision because the ALJ would not have been required to give any significant weight to that opinion. Dr.

Kondor indicated that she based her opinion exclusively on plaintiff's subjective history and "current symptoms" as reported during a single evaluation. There is no examination report in the record. Dr. Kondor provided no formal diagnosis of a mental disorder. She cited neither mental status examination findings nor other clinical data in support of her conclusions. Since there is no evidence that she was involved in treating plaintiff for fibromyalgia or reviewed medical records concerning plaintiff's treatment in 2011, her opinion that plaintiff's limitations existed since 2011 or before also appears completely dependent on plaintiff's subjective history. Since the ALJ would have been entitled to reject Dr. Kondor's conclusory, unsupported opinion, it does not warrant changing the ALJ's decision. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-1197 (9th Cir. 2004) (holding that the ALJ did not err in rejecting treating source opinions that were in the form of a checklist, lacked supportive objective evidence, were contradicted by other assessments of the claimant's medical condition, and were based on the claimant's permissibly discredited subjective complaints).

**Conclusion**

The Commissioner's decision is based on substantial evidence in the record and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

May 9, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge